The next case today is Mark Sparks v. Janet T. Mills et al., appeal number 21-1346. Attorney Garvin, please introduce yourself for the record and proceed with your argument. Thank you. Good morning, your honors. May it please the court, my name is Carol Garvin, and I represent the plaintiff and appellant Mark Sparks, and I'd like to reserve two minutes for rebuttal. You may have it. Thank you. This is an unusually strong due process case that should have been permitted to go forward to discovery for three key reasons. First, the district court here erred in dismissing this case by creating a brand new rule that pre-deprivation process in any form is required only when the ability to sustain life is the interest at stake. In fact, under decades of Supreme Court precedent and precedents of this court, the normal or some form of pre-deprivation process is required whenever there's a protected property interest, regardless of whether that interest is tied to the actual ability to sustain life. Second, here the state provided no meaningful procedural safeguards whatsoever. There was no notice and no opportunity to be heard in any form before the unemployment benefits here were seized and were stopped. In addition, there was no meaningful post-deprivation process. At the time of the seizure, Mr. Sparks had no available alternatives for appealing the decision. That process was set up only several months after the fact and weeks after this court complaint was filed. Ms. Garvin, sorry to interrupt, but I had a question about that. I thought under Maine law there was a standard procedure for if you were denied benefits that you had a right of administrative appeal. Is that correct? Thank you, Your Honor. There is a standard process that's set up when the normal process is followed. That process was not followed here. No, no, no, I'm sorry, I wasn't very clear. You may say the process wasn't followed here, but the state had, as a routine matter, established such a process. And you're, as I understand it, you're saying the state was slow to acknowledge that that normal process would be available to your clients here. That's a more precise rendition of what happened. Yes, Your Honor, there is ordinarily a process for appealing a denial of unemployment benefits. And that was what was not afforded here. In fact, there was no decision at issue. No, what do you mean it was not afforded? Ultimately, it was afforded. Your argument is that they did not immediately notify your clients that they had this right. Correct? Correct. There was no notice at the time. There was also no decision at all. So normally a decision is issued saying this is why you were denied benefits, giving the reasons, also giving the appeal rights, so none of that occurred here. Was it clear that that state process applied not only to a denial, but to a revocation? Ordinarily, there's no process by which the state can simply revoke or deem benefits that have already been paid. So normally that process doesn't occur at all until there's been a hearing. And at that point, there's normally a notice of suspected overpayment. And then a hearing is held, a chance to have oral testimony, witnesses can be asked questions. So that's the point at which then an overpayment notice can get issued and then money can be required to be returned. So that's a completely different process than the seizure of benefits here. So, correct, there's sort of two different processes for the two different kinds of revocation. Judge Selye's question raises this clarifying question for me. This money was, in fact, I understand the state to say, put in a special escrow fund so that it would be available to your clients if they win any lawsuits saying they're entitled to these funds. Is that correct? Correct. That's our understanding so that the money was taken and put into a trust account. Originally, it was deposited into their own prison accounts. But then when this happened, it was taken and put into a trust account that the plaintiffs can't access for the last year and a half or so, have not been able to access. Yeah. Okay. Thank you very much. Sorry to have interrupted. Proceed. Of course, Your Honor. Thank you. So, here, after that process that the plaintiffs were first notified about, about two months after the seizure was the first time that they got decisions stating that their benefits had been denied. And so that process is inadequate and has proceeded incredibly slowly and, of course, started only after this due process complaint was filed. And the third key point here is that the district court separately and independently erred by assuming facts that were not in the record and were actually directly contrary to facts alleged in the complaint. In particular, the unemployment benefits here were relied on, were absolutely critical to the plaintiffs. And as the complaint alleges, the plaintiffs depended on these unemployment funds for supporting their families and children who were not incarcerated, for saving up for their own upcoming release, which was coming soon for many of these workers as this was a transitional work program, and for purchasing their own kinds of basic care items, things like soap, shampoo, paying for phone calls. Miss Garvin, it strikes me that that argument is directly related to your first argument, which is if the appropriate standard is not the ability to sustain life, then it becomes quite relevant to consider reliance interests, the importance of this benefit to the recipient, so on and so forth. Correct? I believe so, so I think there's two independent errors here. The first is the legal standard used, and the second is even if that was correct, there is underlying factual assumptions that were made that we believe violated the motion to dismiss. Okay, did you, I'm sorry, I believe you put in the record the reliance interest argument that you're just making now. Is that correct? Correct, that's, yes, that was briefed below and in this court, and there's a number of specific paragraphs of the complaint that talk about how these particular work release participants were relying on this money for their basic needs. Okay, so please bear with me. Let's assume, arguendo, the district court committed the error of law that you are saying. You said that the law is quite clear that there simply needs to be a protected property interest, and I believe that there is an agreement that that property interest is created by state law. We're in agreement so far. Okay, there seems to be a dispute as to whether this new state unemployment COVID-related statute, in fact, either in intent or in wording, created such a state-created protected property interest. Are we agreed on that? Yes, we agree there is a dispute on that at this point. Okay, as I understand it, someone in the Attorney General's office first read the statute as providing these benefits to the inmates. Correct, there was an Attorney General legal analysis. Four minutes remaining, four minutes. May I ask, was that a formal analysis? Was it signed by the Attorney General, or was it merely a sort of letter response from some Assistant Attorney General? It's attached to the complaint, and I believe it is signed by the Assistant Attorney General, who prepared that analysis. It was in response to an inquiry, I believe, from the Department of Labor, and then the Department of Labor awarded benefits. Okay, so the Department of Labor thought at least the statute might possibly be read to include the inmates, or they wouldn't have asked the question. They then asked the question, someone not the Attorney General, but an assistant then responds. Okay, then the governor says, oh no, that's not how I read the statute, and she is the former Attorney General of Maine, after all. She then says to the department, I don't care about this prior interpretation. It's wrong, and you're going to stop the payments while we sort this through, and the money is going to be put into an escrow fund. We're agreed so far, right? I think mostly, Your Honor, one slight clarification is I don't think just reading the governor's order that she issued on that date to the two departments, I don't think she was saying as a matter of my interpretation of the statute, these individuals aren't eligible. She didn't talk about the statute or the former AAG's analysis. She simply said, these aren't the kinds of people that we want to protect, and we need to reserve this money for struggling Mainers. It was not a legal analysis. All right, I think the state is going to dispute you on that. So, I'm kind of getting to my bottom line question here. If the legislature did not, in fact, by text or intent, include your clients, inmates, in these work release programs within the scope of that benefit, then there is no protected state property interest. And the best people to resolve that question are the state courts in Rhode Island. I'm sorry, in Maine. Sorry. I was looking at Judge Salyer when I spoke. I will no longer look at him when I'm speaking. And the Maine law court, in the end, will have to resolve this question. Thank you, Your Honor. So, I think that one thing that's really key here is that this court is not being asked to decide as a certain matter, as a final matter, are these individuals covered by the Maine law. That's not the question. No, no, no, no, no. If you don't have a protected state property interest, you don't have a due process claim. We have just established that. What I don't understand is the haste of the federal district court in this instance to the claim based on what I'll assume arguendo is an erroneous view of the due process clause without giving the state courts the chance to look at and determine the question of whether there is, in fact, a state protected property interest. Okay. I understand your clients want the money as fast as possible. Whether they get the money is going to turn on whether there is such a state protected property interest. The district court has thrown a monkey wrench into your efforts to get that money. Following the logic that I've just laid out for you, isn't the quickest way to resolve this for us to essentially certify a question to the Maine law court and get them to address the question of whether there is a state protected property interest might be the fastest way of getting this thing resolved? Your Honor, I don't know which would be faster. I do think that that is on the due process claim. I think the Supreme Court in this court has said many times that. That's time. No, but please answer the question. That the due process rate does not depend on a showing of certainty that the individual would be eligible for the benefits or would be able to continue to be employed. No, that's on an individual basis. That is not on does this statute apply to this category of people or not. I don't actually think that that gets you very far. After all, the state has put this money in an escrow account in the interim, so the money is there. Ms. Garvin, can I ask you, do you draw a distinction between the actions of the state in taking away the money that was in your clients' accounts from the issue of the denial of continuing benefits? That is, the money from the unemployment, the question isn't whether there was a protected property interest on this issue in the statute. The question on the money taken from their accounts is did they have a protected property interest in their money in their accounts as a separate analysis from whether they had a protected property interest in the benefit received. Do you draw that distinction between the two when analyzing a pre-deprivation due process  Thank you. Yes, Your Honor. We believe there are two separate deprivations here. This Court and many others, but in the Young v. Wall case, this Court explained when there is money in a prison account, regardless of source, so it might be from family members, it might be from benefits or wages, but there is a constitutionally protected property interest in that money that was already awarded here by the Department of Justice. Any cases that you know of where a court has said that in denying unemployment benefits or welfare benefits or any other benefits, there is no protected property interest in money in a person's bank account once they've received it because they weren't otherwise entitled to that public benefit? I'm not aware of something saying there is no protected property interest once that's been deposited in their accounts. So, regardless of what the state court might determine on this issue, is it the plaintiff's position that that's irrelevant to whether they had a right to a pre-seizure of assets in their accounts, regardless of where it came from? Yes, Your Honor, and I think that's particularly true when we're on a motion to dismiss, the standard is plausibility. I think it's at least plausible that they did have a right to that money, that AG's memo said that, but yes, even if it didn't reach that plausibility threshold, which we think it clearly does, that's a separate issue and they separately would have an interest in that money. Ms. Garvin, let me pursue this a little further. You say there is no case law on point. Again, we are talking about an interpretation of a state statute that is categorical as to whether it's going to apply to this plaintiff class or not. It would seem to me that even the issue of funds already paid into the account is a state law issue. Federal law does not create the property interest. If, in fact, it was a violation of state law to have paid this money into the accounts, I do not see that a federal due process claim suddenly gives you a state law property interest. I can understand a distinction between benefits that were paid, perhaps on a mistaken, perhaps on a correct construction of state law. Nonetheless, it strikes me that both categories, future payments and those already in the account, are, in fact, state law protected property interests. You do say this is on motion to dismiss. The path that I was outlining does not result in dismissal of the case. It does result in, from my point of view, the promptest possible resolution of both of the state law questions. Thank you, Your Honor. I would just point the court to this court's decision in Kluge, where I think in a lot of ways there was a similar due process claim that depended on the construction of, there was, I think, a collective bargaining agreement. Similarly, in looking at whether there was a protected property interest, it was a general question and the court said, if it's ambiguous... This is not a collective bargaining agreement. This is a state statute, as to which there seems to be a dispute as to whether the governor is correct or the assistant attorney general who gave this advice that resulted in the deposit of this money into the account was correct. Agreed. We agree there's a dispute on that and we simply would go back to the louder mill standard, which is the plaintiffs don't have to prove a certainty to a certainty that they would be eligible in order to go forward with their due process. That may be, but if I may finish, and then it's Judge Selye's question. If I may finish, even the plausibility question is a state law question and I am reluctant personally to weigh in on the construction of this state statute. Understood, Your Honor. I think Judge Selye had a question. Well, I may not understand your position correctly, Counsel, but as I understood your position, at least with respect to the money that was already in the prison account, I didn't understand your claim of a property interest to depend on a construction of a state statute. I thought your argument was we have a property interest because that money has been paid to our client. It is our client's money at that point from the moment it hits his prison account and the state can't claw it back on any rationale, including a rationale that some other construction of the statute should apply without affording him the process that the Constitution requires. Correct, Your Honor, that is our position. Can you cite a single case in all of the due process jurisprudence which supports that position? Well, Your Honor, we cited several circuit decisions, including this Court's decision in Young v. Wall, which are explaining why there is a protected property interest. The Young case is similar in that the Court went out of its way to say it sort of was ambiguous whether interest on the accounts was something they were entitled to under the statute, but the Court said, but we're not talking about interest that has already been deposited in their account. Clearly, that would be a protected property interest. Okay, thank you. At this time, Attorney Garvin, please mute your audio and your video. Do you still have your two minutes rebuttal later? And Attorney Morrell, if you could introduce yourself on the record to begin. Thank you. May it please the Court. My name is Kelly Morrell and I represent the Appalese Governor Janet Mills and Commissioners Randall Liberty and Laura Fortman. The District Court correctly concluded that the State did not violate Mr. Sparks' due process rights when it ceased paying him unemployment benefits in the midst of the first few months of a global pandemic without pre-deprivation notice in hearing. That decision should be affirmed for two reasons. First, the State did not infringe on any protected property interest that Mr. Sparks held in unemployment benefits. Or should we be deciding that as opposed to the main courts? It's pretty clear here, Ms. Morrell, that the District Court used an erroneous standard as to the statement that the benefit has to go to sustaining life. All right, let's just start with that as a common premise. You, in my view, may or may not have a good argument as to no protected property interest. But here we are, a federal court. Your governor has taken one position on the meaning of this statute. Someone in your office took an opposite position on the meaning of the statute and in fact permitted these payments to be made through advice to the Department of Corrections. This is an extraordinary situation that, in my view, should make a federal court very, very cautious about dismissing a case or trying to resolve a state law issue. So could you address my concerns, please? Yes, Your Honor. Thank you. And I will say your office created, in part, this situation, which has now been handed to the federal courts. Thank you, Your Honor. We did originally argue before the District Court that the court should abstain under Burford. Well, you may have gotten quite the wrong abstention label here. My issue is somewhat different. Okay. Can you get to the merits of this, please? We can. In this case, the District Court did assume that there was a property interest in the unemployment benefits and then applied the Matthews factors to this case. And this court could do the same thing. Rather than deciding the state law issue, this court could assume without deciding that Yes, we could. But suppose we chose not to. Is the state agreeable to a certificate? These poor plaintiffs have been knocking around for months now without the use of these funds. In the meantime, the federal court issued a decision. It's now come up on appeal. Doesn't it make sense for us to certify this question to the law court and ask for expedited consideration? Well, Your Honor, we certainly would not object to that. Mr. Sparks is involved in the state law appellate process right now. He is at or near the first stage of court review. You seem to be missing my point. There may be individual questions. If we wait for the issue to work its way through the administrative law process and then to the superior court and then up to the main law court, what are we talking about? Three or four years? I'm not sure how long it would take, Your Honor. It would obviously take a good deal longer than if we just send the issue to the main law court. And we would certainly not object to that, Your Honor. But sending that issue to the main law court wouldn't get us anywhere, at least in my view, with respect to the seizure of the funds from the prison account. The due process violation there, the alleged due process violation there, is independent of the construction of the statute. The fact of the matter is that's money which was paid to Sparks. Sparks deposited it in his account. I think that he has a protected property interest in it. It may have been erroneously paid, and there are procedures by which the state can claw it back, but they can't simply do it with no process at all. They can't do it without constitutionally sufficient process, and that's exactly what they've done in this case. Your Honor, I respectfully disagree that there was a due process violation. Ms. Morrell, would you please start listening to us? Yes, Your Honor. You are in federal court. These sums have been seized somewhat arbitrarily. We have concerns about what state law provides here. Would the state be amenable to giving these inmates access to the funds pending certification, or at least giving them access to the funds subject to any normal clawback procedures? And I would assume, to use Judge Selye's expression, clawback procedures, that at that point it is the state's burden to show that the payments were inaccurately made. Is that correct? Your Honor, I can't really answer the question as to whether... You should be able to answer that question. Respectfully, Your Honor, it's not really my decision as to whether the state would be agreeable to allowing the residents... No, but it is something that you can take to your clients and then make a representation to this court. Yes, Your Honor. Ms. Morrell, can I ask you, I'm trying to figure out on the issue of the money that had been paid,  what is the state's position on its right to, without any notice or hearing, to have gone in and taken that money? Do you justify that action because this is an inmate's account, and therefore their property interest in their inmate's account is less? Do you justify it because it's unemployment benefits and somehow ability to sustain life aspect? I'm unclear what the state's position is on what allowed them to take money in an account without notice and a right to be heard. On that specific question, what is the state's position? Yes, Your Honor, our first position is that under state law, the Commissioner of Corrections has the authority and discretion to limit access to prisoner accounts. So as to the money that was already in there... To limit access to prisoner accounts if it relates to the safety and security of the prison facility. But that wasn't the rationale here. There's nothing about this money that related to safety or security. And also orderly management of the facility. Yes, orderly management. So what does this have to do with orderly management? You better move on. Do you have a different argument? Also, in light of the Governor's letter to the Commissioner, instructing the Commissioner to freeze the funds and transfer them to... Ms. Morrell, if the Governor decided that welfare benefits were inappropriately being distributed to people, let's say, that don't work, and that was her political position. Right or wrong, that's her political position. Does she have the right without notice and hearing to go in and take money out of people's accounts? I guess I'm trying to get at what the distinction is here that allows the state, without notice, to take money out of people's accounts regardless of how they got it. Without some notice and hearing issue, whatever that may be. I think the difference in this case here, Your Honor, is this is not the normal case. We were in the middle of a global pandemic. The Governor, as she said in her letter, was concerned about dispersing the money, in this case, to residents who had their needs taken care of by the Department of Corrections. Five minutes remaining. But the amount of money being paid to Mr. Sparks per week had very little relation to Maine's efficacy in combating the pandemic. But at the time, Your Honor, we didn't know what trajectory the pandemic would be taking. Well, that's absolutely true. It's absolutely true, but we're still talking a drop in the bucket. We're not talking about disbursing some $50 million grant when you might need that money to fight the pandemic. We're talking about a few dollars a week and being able to, if your position is right, being able to cut that off or recapture it if you move forward with a constitutionally appropriate process in a timely fashion. That's correct, Your Honor, but now we can say that maybe it was a drop in the bucket. Well, Ms. Kelly, we are in now. How much money was seized and put into escrow from the accounts? You surely must know that number. I think the disbursement was close to $200,000 total. All right. So we're talking about $200,000. All right. So subject to my colleagues' views on this, I'm going to float an idea. And the idea is this, that you get together with your opposing counsel. And as to these funds, the $200,000 that has been disbursed, see whether it is possible to work out some agreement that would provide those inmates access to the $200,000, subject in the end to any clawback that is based on individual circumstances, like the prisoner wasn't actually in the work release program. And the second part of it is a certification of questions to the main law court, which could be agreed upon by counsel if we always prefer to get the views of counsel on what the appropriate questions are that would be certified. We don't want this situation to become like JARNDIS versus JARNDIS in Dickens, of legal proceedings going on forever and these individuals not having access to money that the state maybe mistakenly but originally gave them. But we also don't want to get into a fight between your governor and other people as to the meaning of this statute, which should be determined by your main law court. Is the state willing to discuss such a resolution with the plaintiff's counsel and report back to us within 10 days? Yes, Your Honor. I'm willing to take that back to my superiors, yes. All right. I assume my colleagues have no objection to this instruction, but they may have objections and they may have additions that they want to suggest. So I'm going to call on them. I have some concern, Judge Lynch, first. I have a concern with leaving the district court decision on the books. Yes. Because it is, in my view, it is an untenable precedent. So the conditions would include vacating the district court decision? Yes. My second question, and this is really a question that plaintiff's counsel would have to consider, I have a thought, not fully developed, that this may be a very difficult situation to work out because we're dealing here with a putative class action, but we have no class certified. And I think at this point, plaintiff's counsel can't do more than speak for Mr. Sparks. So I'm concerned about how at this point we could bind any other prisoners. I just want to think some more about it. That is an issue that it seems to me could be on the table for discussion, including possible agreement by the state. I don't want to wind up conducting our ensemble in public because the bar may discover that the emperor has no clothes. But it seems to me we may be able to accomplish this result better if we do it by our own order, which would eliminate some of these problems. But I think that you and Judge McConnell and I could discuss this, if we haven't heard yet from appellant's counsel as to whether there is any interest in this. All right. I will give Judge McConnell the comfort of knowing that I'm going to call on plaintiff's counsel now to see if there is any interest in this idea, the details of which would be specified in broad terms by an order from this court. All right. Ms. Morrell, we will now hear from plaintiff's counsel. Thank you, Your Honors. Attorney Morrell, please mute your audio and video. Attorney Garvin, please introduce yourself on the record to begin. Good morning, Your Honors. This is Carol Garvin again for the plaintiff, Mark Sparks. I think two quick points. The first is I just go back to the point that I think there are two separate deprivations here, and we do not think that a certification to the law court would address the seizure element. And so that taking of money already deposited in the accounts, I think that is a distinct issue that would not be the subject of that state law certification question. And that clawback or that seizure of money already deposited in their accounts, I think I just want to highlight how that is potentially far-reaching because I don't see any limiting principle on that. If these individuals could have money seized from their accounts, many other unemployment beneficiaries, welfare beneficiaries. Yes, Ms. Garvin, as Judge Salyer points out, the most sensible way of addressing this is to address it on a class basis. But you cannot at this point provide any guarantees that all members, all people who claim to be members of the class are in fact in the same position as Mr. Sparks. But that's something on which the parties could discuss the question. As to limiting the certification to the main law court, it seems to me that's a legal question that maybe we can provide some further guidance on. But the structure that we were discussing with the state was a structure that, as to the funds that were deposited in the account and then taken out, the $200,000, your clients would be given access to those funds. Excuse me, Judge Lynch. By given access, you mean those funds would be restored to the prisoners' accounts from which they were unilaterally seized? That was what I had in mind. But the best way of doing that, it strikes me, is something that could be discussed between plaintiffs' counsel and the state. I just don't know the mechanics of it all. But yes, Judge Salyer, you're quite right. That is the concept here. Go ahead, Ms. Garvin. Why don't you answer Judge Lynch and then I'll... Yes, there are certainly logistical questions in my mind. For example, I think many or maybe almost all of these workers have been released because they were in a transitional program. We represent one plaintiff at this point and don't have even knowledge of addressing basic information for many people. I think I just want to step back and see if I understand. As I understand it, there's two pools of money and different things were done with each. So the seized money, which is the $198,000 or so, that seized money would be restored to the plaintiffs and then separately there was, say, four months of additional benefits they could have received. So that amount of money, which is some additional amount, that would sort of be put on hold and then there would be certification to the law court on that issue of their eligibility. No, Ms. Garvin, you misheard me. This court will decide what issues get certified to the main law court. But there are two pools of money and the notion is as to the $200,000 pool, that that pool gets restored to your clients. Those who have been released, it's obviously not being put into their client account. It's something else. Those are the mechanics' idea to be worked out. Judge McConnell. Thank you, Judge Lynch. Ms. Garvin, off the current topic slightly, could you just clarify for me, and if it's in the record, I apologize. I reviewed the record a couple weeks ago. I didn't see it in the briefs. Your clients, did they receive only a COVID, what I would call a kicker of unemployment, or did they receive unemployment benefits under the statute that has been involved in New Hampshire for I would assume decades, if not longer? In Maine. I'm sorry, Maine, yes. I figured. We're going to hit every state in the First Circuit before we're done. I apologize, Judge Lynch. They received both. They received, it varied somewhat, but they received something like $170, I think, for most of them, of benefits, the normal benefits under state law. They also received the special federal $600 additional money. And so the money that was in their accounts that was seized was both pools of money from two different statutes? Correct. It was all, yes. I think it was all awarded through the state Duel just because of the way the program worked, but yes, it was all seized. And the four months additional is the same? Those are both from these two pots of statutory money, so to speak, the normal unemployment benefits and the COVID kicker? Correct. That was my recollection, but it might be slightly different and it got changed, I think, at various points, how long the additional $600 lasted, but some number of months of both that they could have received. Thank you, Judge Lynch. Okay. All right. So, Ms. Garvin, if I understand, you, like the state, have expressed some willingness to pursue this, what I'll call, bicameral idea. Thank you, Your Honor. Yes, we're certainly willing to discuss it with the state and see if we can figure out some way to get this into the claimant's hands soon. And I would just say that, given the benefits themselves very quickly, there's also been the loss of the use of this money for, you know, what, 20 months or so? Well, yes. Yes. Having heard a willingness from both counsel to begin discussion, I also want to endorse Judge Selye's idea that the court will issue some order as to this in light of that willingness. It does not mean you should not start discussing how to get this resolved in the meantime. Thank you, Your Honor. Okay. And I want to say to both of you, if this isn't worked out by agreement, this court will issue orders and not everybody's going to be happy with the orders that this court issues. Thank you, Your Honors. All right. All right. So, do I need to hear further from the State? No, Your Honor. Thank you. I'm not sure where we're left, Judge Lynch, and I think we should be very clear about it because it seems to me we have no agreement now. I'm not at all certain that we're going to get an agreement, but we certainly should have a time limit within which to get it. Correct. Because I don't think this matter should be allowed to linger, and I can't envision, considering there are these two pools of money, I can't envision any disposition that's not going to require some sort of opinion from this court, and I don't think that should be overly delayed because if there has been an erroneous deprivation here, we should cure it at the earliest practicable time. My notion was that we would try to get an order out by the end of this week and that the parties would have no more than 10 days, maybe another seven days, to report back to us that this matter would be resolved within the next two weeks either by agreement or we know that there is no agreement. Could I make a suggestion? Could we ask counsel to remain in the lobby and let the three of us have a preliminary discussion among ourselves? Because I want to be sure we're all on the same wavelength here. Okay. Then, Dan, how do we do that? Technologically, how do we do that? Yes, Judge, I think if you were going to meet here, I can remove the two attorneys and they can immediately rejoin and be in the lobby and they won't be able to see and hear us and nor will the public. It will just be us. Or if you wanted to leave and go to your other meeting and then come back, you could do that as well while we wait here. No, I prefer that we do it here and not have to go to another meeting and then come back. All right? At this time, I can volunteer to remove Attorney Morrill and Attorney Garvin. They would immediately rejoin this meeting just like they did earlier today and they would wait in the lobby until we readmit them. All right. Thank you. Counsel, you will remain in the lobby until we are back. If you have any trouble reconnecting attorneys, please just text me or email me and I will get you back in the meeting when the time is right. I'm going to remove you now. We are returning to case number 211346, Mark Sparks v. Janet T. Mills et al. At this time, Judge, how would you like to proceed? All right. First, I appreciate the willingness of both sides and express the appreciation of the Court for the willingness of both sides to have discussions and attempt to resolve any and perhaps all of the issues in this case. What we are doing is instructing counsel to consult and report back to us within 10 days of the resolution of any or all of the issues in this case in light of the comments which have been made by the three judges at oral argument in our efforts to guide you toward some sort of resolution of the case. We would hope we would get a single filing from the opposing counsel in this case as a report to the Court and that is what you should strive to do. If you are unable to do that, then we would expect a joint report plus individual reports from each of you. There are a number of issues here which have been discussed in the course of the oral argument and that is why we are referring to any or all of the issues. It is not the Court's desire at this point to give you further instructions beyond what we have suggested at oral argument. If the parties are unable to resolve any or all of this, you will expect that we will and we will do so in the normal course by issuing opinions. Is that understood? Yes, Your Honor. Do my colleagues have anything they want to add? No, that is very well stated. No, thank you. Well, thank you and we appreciate your upcoming efforts in the next 10 days. We hope you stay safe from the pandemic and good luck with your negotiations, attempted resolution of the matters raised in this case. All right? Okay. Would you each actually talk for the record and not just nod your head? Ms. Garvin. This is Carol Garvin for the plaintiff. Thank you. Understood, Your Honors. Thank you. Ms. Morrell has already said she understands and agrees. So thank you very much and you are now, you have to leave and go have lunch. All right. Thank you. Okay. That concludes arguments for today. This session of the United States Court of Appeals is now recessed until the next session of the Court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.